UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARETHO OMAR,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                Defendant.

Case No. C16-1807-JCC

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Haretho Omar seeks review of the denial of her application for Supplemental Security Income. Ms. Omar contends the ALJ erred in: (1) evaluating the treating opinions of Anya Zimberoff, Psy.D. and Brianne Taylor, M.D.; and, (2) evaluating her own symptom testimony. Dkt. 10 at 1. As relief, Ms. Omar requests that this matter be reversed and remanded for an award of benefits. *Id.* at 17-18. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

On December 14, 2010, Ms. Omar filed an application for Supplemental Security Income (SSI) benefits, alleging disability as of January 1, 2002. Tr. 21. Ms. Omar's application was denied initially and on reconsideration and by Administrative Law Judge (ALJ) Verrell Dethloff in a hearing level decision dated June 18, 2012. Tr. 21, 158-74. The Appeals Council remanded the matter to the ALJ to with instructions to review new evidence, reevaluate the opinion evidence and obtain additional evidence related to Ms. Omar's mental impairments. Tr. 21, 180-81. After the ALJ conducted a hearing on November 18, 2014, and a supplemental hearing on February 19, 2015, he issued a decision finding Ms. Omar not disabled. Tr. 21-31.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Omar has not engaged in substantial gainful activity since December 14, 2010, the application date.

**Step two:** Ms. Omar has the following severe impairments: gastritis, headaches, depression, anxiety disorders variously diagnosed as anxiety and posttraumatic stress disorder (PTSD), and dependent personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Omar can perform light work except that she can stand and walk with normal breaks for a total of about four hours in an eight-hour workday. She can sit for a total of about six hours with normal breaks in an eight-hour workday. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can frequently balance and climb ramps and stairs. She can occasionally climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. She can perform unskilled work tasks with customary breaks and lunch. The work tasks must be simple and routine. She can have occasional contact with the public for work tasks. She can have occasional contact with coworkers for work tasks. There should be an emphasis on occupations and duties dealing with things and objects rather than people. There should be no fast-paced work, defined as constant activity performed sequentially and in rapid succession. She is limited to low stress work, defined as involving only occasional decision making.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

**Step four:** Ms. Omar cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Omar can perform, she is not disabled.

Tr. 21-31. The Appeals Council denied Ms. Omar's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-4.[4]

## DISCUSSION

A. **Medical Evidence**

Ms. Omar contends the ALJ erred in evaluating the opinions of treating doctors Anya Zimberoff, Ph.D. and Brianne Taylor, M.D. Dkt. 10 at 3-15. The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996). When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.*

Dr. Zimberoff treated Ms. Omar over the course of several years and diagnosed her with PTSD and dependent personality disorder and assessed a Global Assessment of Functioning (GAF) score of 34. Tr. 786. In January 2011, Dr. Zimberoff opined that Ms. Omar's PTSD and depression prevented her from working for the foreseeable future. Tr. 694. She noted that even minor stress created high anxiety and Ms. Omar had "trouble learning new things or focusing on even simple everyday tasks." *Id.* In January 2013, Dr. Zimberoff found Ms. Omar's conditions resulted in nightmares and an inability to calm her mind and that she had depressive symptoms including lack of energy, motivation, poor self-esteem, and anhedonia. Tr. 786. She opined that Ms. Omar's PTSD and depression were enduring and resistant to treatment. *Id.* She found that

---
[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

Ms. Omar also suffered from chronic pain, which prevented her from caring for her children, her household, or completing basic chores. *Id.* Dr. Zimberoff noted that Ms. Omar's "disability is so pronounced, and no neurological cause had been found, leading [to a diagnosis of] Personality Disorder based on a pervasive pattern of passive behavior and helplessness." *Id.* In June 2014, Dr. Zimberoff attempted to conduct the Montreal Cognitive Assessment (MOCA) to evaluate Ms. Omar's reported memory difficulties. Tr. 1185. Dr. Zimberoff noted it was a "struggle to explain the tasks and for her to do any of them" and that Ms. Omar had "no capability of completing any tasks on the MOCA exam and was easily discouraged." Tr. 1186. She noted Ms. Omar was "very slow and unpreoccupied about mental status exam questions" and had a "very poor mental status orientation." *Id.*

Treating provider Dr. Taylor, noted Ms. Omar had severe depression and difficulty retaining information which made learning English difficult. Tr. 188. Dr. Taylor completed a WorkFirst assessment in June 2014 in which she diagnosed Ms. Omar with chronic abdominal pain, memory loss in the setting of a prior traumatic brain injury (TBI), depression/anxiety, and PTSD. Tr. 1142-44. She opined that Ms. Omar was unable to work, that she was unable to communicate effectively due to chronic disorientation and severe depression. *Id.* She indicated Ms. Omar's family was responsible for her daily self care and she was unable to organize herself for independent cooking, cleaning, bathing etc. *Id.* She opined that Ms. Omar was not a good candidate for training, that she was unlikely to improve, and that she was severely limited and unable to lift 10 pounds from a physical standpoint. *Id.*

The ALJ discounted Dr. Zimberoff and Dr. Taylor's opinions as "inconsistent with the claimant's longitudinal treatment history, the objective clinical findings, the claimant's performance on physical and mental status examinations, and the claimant's documented daily

and social functioning set forth above and in Judge Dethloff's June 2012 decision." Tr. 29.

The ALJ reasonably discounted the physical aspects of Dr. Zimberoff and Dr. Taylor's opinions. Specifically, the ALJ reasonably discounted Dr. Zimberoff's opinion that chronic pain prevented Ms. Omar from caring for her children, her household, or completing basic chores as inconsistent with evidence from the Cooperative Disability Investigations Unit (CDIU) report indicating that, while her son helped with some duties and drove her to appointments, she was capable of performing the above basic activities independently. Tr. 1317-24.

The ALJ also reasonably discounted Dr. Taylor's opinion that Ms. Omar was unable to lift 10 pounds as inconsistent with the physical examination findings. Tr. 29. Dr. Taylor does not explain the basis for her opinion and the ALJ reasonably found her conclusory assessment of significant limitations inconsistent with the overall minimal physical findings the ALJ cites in the record. Tr. 26-27; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, … or by objective medical findings.") (internal citations omitted); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may discount treating doctor's opinion as inconsistent with the medical records). The ALJ also reasonably discounted this portion of the report as based to a large extent on Ms. Omar's self-reports. Tr. 29. Dr. Taylor does not support her opinion with any specific physical findings or testing and even states that her "primary concern" is with Ms. Omar's mental health limitations, but that she "doubts" Ms. Omar could lift more than 10 pounds. Tr. 1143. Given that Dr. Taylor did not cite to any specific physical findings supporting her opinion, and that she qualifies her physical assessment as essentially speculative, the ALJ could reasonably conclude this opinion was based primarily on Ms. Omar's self-reported symptoms which, as discussed below, the ALJ properly discounted

in evaluating Ms. Omar's symptom testimony. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (internal quotation marks and citation omitted).

However, the ALJ erred in discounting Dr. Zimberoff and Dr. Taylor's opinions with respect to Ms. Omar's mental impairments generally as inconsistent with the longitudinal treatment history, the objective clinical findings, and the claimant's performance on mental status examinations. Tr. 29. An ALJ must do more than state his or her conclusions; he must "set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick v. Chater*, 157 F.3 715, 725 (9th Cir. 1998). As the Ninth Circuit recently explained in *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) "[a]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' [...] we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review. A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter*, 806 F.3d at 492 (internal citations omitted). The Ninth Circuit further reiterated that "'[o]ur decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony ... and her reports to doctors—and comb the administrative record to find specific conflicts.'" *Id.* at 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). Here, the ALJ fails to adequately identify or explain what aspect of the longitudinal treatment history, objective clinical findings and mental status examinations were inconsistent with Dr. Zimberoff and Dr. Taylor's opinions.

Even if the Court were to comb through the ALJ's summary of the medical record in search of inconsistencies, the ALJ's summary mischaracterizes the record, relying on selected

treatment notes to support the conclusion that Ms. Omar's depression was "mild" and that she had normal mood, appropriate affect, normal cognition, and intact insight and judgment. Tr. 27. For instance, the ALJ cites to some of Ms. Omar's physical treatment records in which her physician noted her to be alert, oriented, in no acute distress with normal mood, appropriate affect, normal cognition, and intact insight and judgment. *Id.* However, the focus of these examinations was not to assess Ms. Omar's mental status but to assess her physical complaints and the doctors do not appear to have performed any formal mental status testing nor do they explain the basis for their findings. These cursory and conclusory assessments of Ms. Omar's mental status in selective treatment notes in the context of examinations focused on physical complaints are not sufficient to undermine the treating opinions of Dr. Zimberoff and Dr. Taylor which focused on Ms. Omar's mental health impairments. *See Steiger v. Colvin*, No. 16-5106, 2016 WL 3570775 *4 (W.D. Wash. July 1, 2016) (The "less extensive findings rendered by other providers who were not tasked with assessing plaintiff's functional limitations", without more, do not warrant discounting the more extensive findings and opinions of providers who were tasked with that responsibility); *see Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Nor do the selected treatment notes cited by the ALJ reflect the record as a whole which shows Ms. Omar's depression was more regularly assessed as moderate to severe, and that the majority of mental status examinations and provider observations in the record reflect evidence of mental health symptoms including flat, blunted affect, disorientation, delayed psychomotor activity, avoidant of eye contact, and impaired memory, insight and judgment. Tr. 506 (poor attention span and concentration), 515, 571, 578, 587, 621, 642, 702, 722 (PHQ-9 score reflects severe depression), 723, 731, 737, 740-41, 744, 748, 756, 815, 878, 886, 890, 894, 898, 904 (PHQ-9 score reflects severe depression), 910, 914, 921, 922, 924, 926, 960, 964 (attention and

concentration impaired), 1022, 1096, 1142, 1155 (poor cognition), 1159 (memory impaired), 1185 (unable to complete tasks on MOCA, poor mental status orientation), 1192 (PHQ-( score reflects moderate depression, memory impaired, symptom of depression is memory trouble), 1199, 1221, 1353 (not oriented to time, place, person or situation, poor insight). The Ninth Circuit has repeatedly reinforced that, with respect to mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). This appears to be what the ALJ did here. Accordingly, substantial evidence does not support the ALJ's discounting Dr. Zimberoff and Dr. Taylor's opinions as inconsistent with the claimant's longitudinal treatment history, the objective clinical findings and the claimant's performance on mental status examinations.

The ALJ also discounts Dr. Zimberoff and Dr. Taylor's opinions as inconsistent with Ms. Omar's "documented daily and social functioning set forth above and in Judge Dethloff's June 2012 decision." Tr. 29. The ALJ reasonably discounted Dr. Zimberoff's opinion assessing a GAF of 34 reflecting "major impairment in all areas of her life (neglectful as a parent, unable to do household work, unable to work, and difficulty relating to other persons or to maintain friendships was unable to maintain friendships)" as inconsistent with her activities. *Id.*

Specifically, the CDIU report reflects that, according to her son's statements and investigator's observations, Ms. Omar did have friends and, although her son checked in on her and helped her with some household duties in the evening, she was capable of cooking, cleaning and caring for the two younger children independently. Tr. 1317-24.

The ALJ also reasonably discounted Dr. Zimberoff's opinion that Ms. Omar was "often in a quasi-catatonic state and unable to move or speak" and had trouble "focusing on even simple everyday tasks" as inconsistent with her ability to engage independently in the activities noted in the CDIU report. Tr. 29, 694. However, none of these home activities undermine Dr. Zimberoff's opinion that Ms. Omar was unable to work in part because even minor stress created high anxiety and she had "trouble learning new things." *Id.* Although there is evidence Ms. Omar was capable of performing some basic activities in the home, the ALJ accepted that she relied on her son to drive her to appointments and to accompany her to places outside the home and there is significant evidence in the form of mental status examinations, provider observations, as well as her difficulty with MOCA testing which indicates memory impairment. Tr. 506 (poor attention span and concentration), 722 (PHQ-9 score reflects severe depression), 904 (PHQ-9 score reflects severe depression), 964 (attention and concentration impaired), 1155 (poor cognition), 1159 (memory impaired), 1185 (unable to complete tasks on MOCA, poor mental status orientation), 1192 (PHQ-9 score reflects moderate depression, memory impaired, symptom of depression is memory trouble), 1353 (not oriented to time, place, person or situation, poor insight). The ALJ fails to give specific and legitimate reasons for rejecting these limitations. While the parameters of these limitation may warrant further development, because Dr. Zimberoff's opinion indicates these impairments are significant enough to prevent Ms. Omar from working, it does not appear that the limitations in the RFC to low stress work and unskilled,

simple, routine tasks, would adequately account for the severity of these limitations, nor does the ALJ indicate he is accepting or accounting for these limitations in the RFC. Accordingly, the Court cannot confidently conclude that this error is harmless. *Carmickle v. Astrue*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an error is harmless if it is inconsequential to the ultimate nondisability determination). Thus, on remand, the ALJ should develop the record as necessary and reevaluate this portion of Dr. Zimberoff's opinion.

The Court also agrees that evidence of Ms. Omar's daily and social functioning undermines Dr. Taylor's finding that she is unable to organize herself for independent cooking, cleaning and bathing. Specifically, the CDIU report reflects that she is capable of performing these activities independently. Tr. 1317-24. However, the ALJ fails to explain how Dr. Taylor's assessment that Ms. Omar is unable to work because she is "unable to communicate effectively due to chronic disorientation and severe depression" is undermined by evidence of her daily and social functioning.[5] Tr. 1142. None of the activities cited by the ALJ in his opinion or in Judge Dethloff's opinions substantially undermine this aspect of Dr. Taylor's opinion. That is, none of the activities cited demonstrate Ms. Omar is capable of communicating effectively in a work setting. The fact that Ms. Omar is capable of interacting to some degree with family or close friends does not demonstrate she is capable of communicating effectively (either verbally or nonverbally) in a work setting. *See Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996)

---

[5] Dr. Taylor does not attribute Ms. Omar's inability to communicate effectively to the fact that she is unable to speak English but, rather, to her mental health impairments. Thus, the vocational expert's (VE) testimony that Ms. Omar's inability to speak English would not necessarily preclude her from performing the jobs identified at step five does not necessarily account for her inability to communicate effectively due to mental health impairments. Tr. 125-26. Even if Ms. Omar could not speak English it seems likely that in order to function in the jobs identified at step five she would at least be required to be able communicate to some extent nonverbally, for instance, to convey her understanding of instructions or if she encountered a problem. Because Dr. Taylor's limitation was not included in the RFC, or in the hypothetical to the VE, the Court cannot confidently conclude the error was harmless. *See Carmickle*, 533 F.3d at 1162.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). Moreover, Dr. Taylor's opinion appears to be based in part upon Ms. Omar's demonstrated difficulties responding to questions on the MOCA and inability to complete the testing performed by Dr. Zimberoff as well as her performance on the PHQ9 evidencing moderate to severe depression. Tr. 506 (poor attention span and concentration), 722 (PHQ-9 score reflects severe depression), 904 (PHQ-9 score reflects severe depression), 1159 (memory impaired), 1185 (unable to complete tasks on MOCA, poor mental status orientation), 1192 (PHQ-9 score reflects moderate depression, memory impaired, symptom of depression is memory trouble). Moreover, there is repeated evidence in the treatment notes that, in her interactions with providers, Ms. Omar was frequently confused or not oriented to time, place, person or situation. Tr. 1192 (PHQ-9 score reflects moderate depression, memory impaired, symptom of depression is memory trouble), 1353 (not oriented to time, place, person or situation, poor insight), 964 (attention and concentration impaired), 1155 (poor cognition). While the parameters of Dr. Taylor's limitation on Ms. Omar's ability to communicate effectively may warrant further development, the ALJ does not specifically address this portion of the opinion or explain how Ms. Omar's activities undermine it, nor is it clear that the RFC, or the VE's testimony, accounts for this limitation. Accordingly, the Court cannot conclude this error is harmless. *See Carmickle*, 533 F.3d at 1162. On remand, the ALJ should develop the record as necessary and reevaluate this portion of Dr. Taylor's opinion.

The ALJ also discounts Dr. Taylor's opinion to the extent he opines that Ms. Omar had memory loss "in the setting of prior traumatic brain injury" because the record does not establish

any medically determinable brain or cognitive impairment. Tr. 29, 1142-44. The Court agrees that traumatic brain injury is not a medically determinable impairment as it is not established by medical signs and laboratory findings, for instance, an MRI or CAT scan. *See* SSR 96-4p ("[T]he existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings."). However, Dr. Taylor does not definitively attribute Ms. Omar's memory loss to a traumatic brain injury but indicates only that it is in the setting of a prior traumatic brain injury as reported by Ms. Omar. Tr. 1142-44. Moreover, this is not a sufficient basis to discount Dr. Taylor's finding of memory loss which other providers attribute to Ms. Omar's mental health impairments. Tr. 1192 (memory impaired, symptom of depression is memory trouble). Dr. Taylor specifically notes Ms. Omar's struggles during Dr. Zimberoff's MOCA testing as evidence of her memory impairment and there are numerous other observations, comments and testing in the treatment notes indicating she demonstrated memory impairment or impaired cognition. Tr. 1192, 1185 (unable to complete tasks on MOCA, poor mental status orientation), 1353 (not oriented to time, place, person or situation, poor insight), 964 (attention and concentration impaired), 1155 (poor cognition). Thus, to the extent the ALJ attempts to discount memory loss as one of the bases for Dr. Taylor's assessment of Ms. Omar's inability to work on this basis, he errs.

Finally, the ALJ discounts Dr. Zimberoff's and Dr. Taylor's opinions as based, at least in part, on Ms. Omar's self-report. Tr. 29. However, except to the extent noted above, this is not a sufficient reason to discount the opinions. As discussed above, both Dr. Zimberoff's and Dr. Taylor's opinions are supported by their own clinical observations of Ms. Omar over a span of several years as well as her performance on clinical testing including MSEs, MOCA and PHQ9.

Accordingly, substantial evidence does not support the finding that Dr. Zimberoff's and Dr. Taylor's opinions with respect to Ms. Omar's mental health impairments are based more heavily on Ms. Omar's self-reports than on their clinical observations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").

**B.      Ms. Omar's Testimony**

The ALJ found the medical evidence of Ms. Omar's underlying impairments might reasonably produce some of the symptoms alleged and did not specifically find that Ms. Omar was malingering. Tr. 26. Consequently, the ALJ was required to provide specific, clear and convincing reasons for rejecting Ms. Omar's testimony. *Brown-Hunter*, 806 F.3d 487. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). In evaluating a claimant's testimony, the ALJ may consider various factors including inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and inconsistencies between a claimant's alleged symptoms and her daily activities. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Smolen*, 80 F.3d at 1284 (9th Cir. 1996).

Here, the ALJ reasonably discounted Ms. Omar's testimony based on evidence that she was more independent in her daily activities than she and her son alleged. Tr. 27. Specifically, Ms. Omar testified that she was unable to work due to mobility problems and cognitive deficits. Tr. 386. Ms. Omar testified that she had trouble walking and needed to use a cane, that she was unable to cook, clean, drive or shop. Tr. 26, 49, 71 (testifying "I can't walk"), 75, 85 (testifying

she sometimes walked around her house with her cane for exercise), 390 ("I can't walk by myself"). Ms. Omar and her son testified that her son was her caretaker and that he cooked, cleaned, did laundry, shopped, made sure she took her medication and took her to appointments. Tr. 26, 100-102, 113, 117. Both Ms. Omar and her son testified that although Ms. Omar was the legal guardian of the two younger children in her house, her son essentially cared for them as well. Tr. 100-104, 117. However, as the ALJ noted, the CDIU investigative report contradicts this testimony. Tr. 28. Specifically, the report indicates Ms. Omar was observed by investigators to ambulate normally without the use of a cane. Tr. 1317-24. Specifically, she was observed walking her children to and from the bus stop and negotiating eight steps to her second floor apartment without assistance or apparent difficulty. *Id.* Furthermore, contrary to Ms. Omar's testimony and that of her son, the son informed the CDIU investigators that, although Ms. Omar was sick, she was capable of cooking, cleaning, and caring for the two younger children alone, and that he only came over in the evenings to check on them. Tr. 28, 1317-24. Moreover, the CDIU investigators observed Ms. Omar interacting and socializing with friends and her son told investigators Ms. Omar frequently had visitors. Tr. 1317-24. The CDIU investigators further observed that Ms. Omar was well groomed and her apartment was clean and well organized. *Id.* Absent any explanation for these discrepancies, the ALJ reasonably discounted Ms. Omar's testimony based on the inconsistencies between Ms. Omar and her son's testimony and her observed activities as well as her son's subsequent statements.

      The ALJ also reasonably discounted Ms. Omar's testimony based on inconsistency with the medical evidence. Tr. 26-28; *see Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may discount claimant's testimony based on inconsistency with the medical evidence). Specifically, the ALJ noted that despite Ms. Omar's allegation of significant difficulty walking

and that she needed to use a cane, she was noted on several occasions by providers to ambulate with a normal gait without an assistive device. Tr. 451, 453, 456, 506, 992, 1326-27, 1376. The ALJ also reasonably discounted Ms. Omar's testimony based on her unexplained failure to seek treatment or to follow a prescribed course of treatment. *See Molina*, 674 F.3d at 1112. Specifically, the ALJ noted that although Ms. Omar complained of chronic debilitating pain, despite the recommendation of her provider, she declined to see a chronic pain specialist for her globalized pain, nor was she taking any over the counter medications for her pain. Tr. 1221.

C. **Scope of Remand**

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, the Court finds that not all essential factual issues have been resolved. Specifically, there is conflicting medical evidence in the record. Because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should develop the record as necessary with respect to Dr. Zimberoff's and Dr. Taylor's opinions, reevaluate those opinions to the extent provided above, reassess and re-determine the RFC and proceed with steps four and five of the sequential review process.

DATED this 25th day of October, 2017.

JOHN C. COUGHENOUR
United States District Judge